# United States Court of Federal Claims

No. 05-1291 L
October 10, 2008

---

**YANKTON SIOUX TRIBE,**

                *Plaintiff,*

v.

**THE UNITED STATES OF AMERICA,**

                *Defendant.*

Indian Trust Claims; Motion to Dismiss; Subject Matter Jurisdiction; Application of 28 U.S.C. § 1500

---

*Jeffrey M. Herman,* Herman & Mermelstein, P.A., Miami, FL, for plaintiff.

*James D. Gette,* United States Department of Justice, Environmental Division, Washington, DC, for defendant.

## OPINION AND ORDER

**Block,** *Judge.*

### I. INTRODUCTION

      This case evokes the jurisdiction of the United States Court of Federal Claims. In particular, it implicates the application of section 1500 of Title 28 of the U.S. Code (2008), which divests this court of that jurisdiction with regard to "any claim for or in respect to which the plaintiff . . . has pending in any other court any suit . . . against the United States . . . ." Consequently, if a plaintiff is prosecuting a claim in another court when the plaintiff files the same claim in the Court of Federal Claims, the Court of Federal Claims may not adjudicate the plaintiff's claim, even though subject matter jurisdiction would otherwise lie. What constitutes "the same claim" is the crux of the § 1500 interpretive dilemma. Heavily criticized as unfair and unworkable, there have been calls for the

repeal of § 1500.[1] Nevertheless, despite a possible harsh outcome, paraphrasing Lord Nelson,[2] this court must rise to expectations, do its duty, and simply apply the statute.

In the case *sub judice*, defendant, the United States, holds lands and natural resources in trust for the benefit of plaintiff, the Yankton Sioux Tribe, a federally-recognized Indian tribe in South Dakota. Plaintiff filed a complaint in the United States District Court for the District of Columbia essentially alleging that defendant's officers mismanaged plaintiff's trust and failed to properly account for trust funds. Two years later, while plaintiff's case remained pending in district court, plaintiff filed a similar complaint in this court, also alleging trust mismanagement and a failure to properly account for trust funds. While the complaint in district court seeks declaratory and injunctive relief, the complaint in this court seeks monetary damages.

Here defendant has moved to dismiss plaintiff's claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), RULES COURT OF FEDERAL CLAIMS ("RCFC"), citing the applicability of 28 U.S.C. § 1500 as its rationale. The issue in this case, as is probable in any § 1500 controversy, is whether the complaint in district court and the complaint in this court assert the same claim. For the reasons set forth below, because the two complaints as a matter of law assert the same claim, § 1500 applies. Accordingly, the court must grant defendant's motion to dismiss.

## II. FACTUAL BACKGROUND

Plaintiff, the Yankton Sioux Tribe, is a federally-recognized sovereign Indian tribe occupying the Yankton Reservation in South Dakota. (Compl. ¶¶ 1, 4; Def.'s Am. Answer ¶¶ 1, 4.) Plaintiff is eligible for special programs and services provided by the United States, due to its status as an Indian tribe. (Compl. ¶ 1; Def.'s Am. Answer ¶ 1.) Because of this relationship, defendant holds certain Yankton Reservation land and natural resources in trust, which the Bureau of Indian Affairs, Department of Interior, manages and controls for plaintiff's benefit. (Compl. ¶¶ 4, 7; Def.'s Am. Answer ¶¶ 4, 7.) In this capacity, defendant has approved leases and granted other interests in Yankton Reservation land and has correspondingly assumed the responsibility of collecting, investing, and distributing the resulting income to plaintiff. (Compl. ¶ 7; Def.'s Am. Answer ¶ 7.)

---

[1] *See Keene Corp. v. United States*, 508 U.S. 200, 222 (1993) (Stevens, J. dissenting) ("Admittedly, this is a badly drafted statute . . . . [I]t does not lend itself easily to sensible construction. Moreover, the Court's interpretation of § 1500 today may have the salutary effect of hastening its repeal or amendment."); *A.C. Seeman, Inc. v. United States*, 5 Cl. Ct. 386, 389 (1984) ("Section 1500 is an anachronism. It was first enacted in 1868, and over the years has been encrusted with numerous shadings and tortured constructions."). *See generally* Paul F. Kirgis, *Section 1500 and the Jurisdictional Pitfalls of Federal Government Litigation*, 47 AM. U. L. REV. 301 (1997); Payson R. Peabody et al., *A Confederate Ghost that Haunts the Federal Courts: The Case for the Repeal of 28 U.S.C. § 1500*, 4 FED. CIR. B.J. 95 (1994).

[2] Lord Horatio Nelson, "England expects that every man will due his duty," at the battle of Trafalgar (Oct. 21, 1805), *in* OXFORD DICTIONARY OF QUOTATIONS 558:19 (6th ed. 2004) (citing Robert Southey, LIFE OF NELSON ch. 9 (1813)).

On July 28, 2003, plaintiff filed a complaint in the United States District Court for the District of Columbia ("D.D.C. Compl.") alleging that defendant's officers, Gale Norton, then Secretary of the Interior, and Paul H. O'Neill, then Secretary of the Treasury, failed to properly manage and account for the trust's property and funds as required by law. (D.D.C. Compl. ¶¶ 6, 15, 17.) In its district court complaint, plaintiff's prayer for relief seeks:

> (1) . . . a declaration that the [d]efendants have not provided the tribe with a full and complete accounting of the Tribe's trust funds as required by law; (2) . . . an injunction requiring the [d]efendants to provide a full and complete accounting of the Tribe's funds; (3) . . . attorney's fees and costs as provided by law; and (4) . . . other relief as may be just and equitable.

(D.D.C. Compl. at 10.)

On December 14, 2005, while its case remained pending in district court, plaintiff filed suit in the U.S. Court of Federal Claims alleging that defendant "breached its fiduciary and statutory duty . . . by mismanaging [plaintiff's] land, natural resources and the income derived therefrom," and that as a result, "[plaintiff] lost royalties, interest, income, profits and proceeds which [otherwise] would have been earned . . . ." (Compl. ¶¶ 15–16.) Plaintiff also alleges that defendant has "failed to provide an accounting from which [plaintiff] can discern the nature and extent of any losses suffered." (Compl. ¶ 23.) Plaintiff's prayer for relief seeks "compensatory damages . . ., interest costs, attorney's fees, and all other further relief as this Court deems proper." (Compl. at 6.) Clearly, the issue before this court is whether it must dismiss the instant complaint under §1500 because the two claims are the same as a matter of law.

### III. DISCUSSION

Defendant raises this §1500 issue in its RCFC 12(b)(1) motion to dismiss for lack of jurisdiction. Even absent such a motion, plaintiff bears the burden of establishing this court's jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). However, in deciding a motion to dismiss for lack of jurisdiction where, as here, the facts are not controverted, this court must assume that all of plaintiff's factual allegations are true and draw all reasonable inferences therefrom in plaintiff's favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

Regardless of the possible application of § 1500, there is no facial question regarding subject matter jurisdiction. The "Indian Tucker Act" grants the Court of Federal Claims jurisdiction over "any claim against the United States . . . in favor of any tribe, band, or other identifiable group of American Indians . . . whenever such claim is one arising under the Constitution, laws or treaties of the United States, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band or group." 28 U.S.C. § 1505 (2008). This last phrase, explicitly granting jurisdiction over claims that would

"otherwise be cognizable" in this court mainly refers to the Tucker Act which confers on the Court of Federal Claims jurisdiction over suits against the United States arising under the Constitution, an act of Congress or any federal regulation, or upon any express or implied contract, or for liquidated or unliquidated damages in cases not sounding in tort. 28 U.S.C. § 1491(a)(1) (2008).[3] Simply stated, the Indian Tucker Act allows a Native American tribe to bring suit in the Court of Federal Claims like any other plaintiff. *See Tohono O'Odham Nation v. United States*, 79 Fed. Cl. 645, 652 (2007) (citing *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003)).

All the same, the Tucker Act and the Indian Tucker Act are merely jurisdictional in nature; they do not create substantive rights enforceable against the United States for money damages. *See White Mountain Apache Tribe*, 537 U.S. at 472. A plaintiff must also cite a separate money-mandating constitutional provision, statute, or regulation, which supports a claim for damages against the United States. *Khan v. United States*, 201 F.3d 1375, 1378 (Fed. Cir. 2000); *see also United States v. Mitchell*, 463 U.S. 206 at 216–17 (1983) ("the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained") (internal quotations omitted). Regarding Indian trust claims, like the case at bar, this separate substantive right may be found in a number of statutes and regulations which establish the government's fiduciary obligation to manage and operate Indian land and resources. *See Mitchell*, 463 U.S. at 226. But, even if, as here, subject matter jurisdiction is present, 28 U.S.C. § 1500 divests this court of that jurisdiction with regard to "any claim for or in respect to which the plaintiff . . . has pending in any other court any suit . . . against the United States . . . ."

In determining whether § 1500 divests this court of jurisdiction, we begin with the statute's text, structure, and purpose. *Prati v. United States*, 81 Fed. Cl. 422, 430 (2008) (citing *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004); *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 455 (1993); *Electrolux Holdings, Inc. v. United States*, 491 F.3d 1327, 1330 (Fed. Cir. 2007)). Section 1500 is "awkwardly formulat[ed]," *Keene*, 508 U.S. at 210, and in its entirety provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

---

[3] 28 U.S.C. § 1491(a)(1) provides, in pertinent part, "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

Stripping away the excess verbiage, the core of § 1500 mandates that "[the Court of Federal Claims] shall not have jurisdiction of *any* claim . . . *in respect to* which the plaintiff . . . has pending in *any* other court *any* suit . . . against the United States . . . ." (emphases added). The phrase "in respect to" is roughly analogous to the word "concerning," which means "relating to" or "regarding," MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 257, 1061 (11th ed. 2003), and compels this court to compare the claim before it to those pending in any other court. *See Keene*, 508 U.S. at 210 ("[Section] 1500 requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit."); *Harbuck v. United States*, 378 F.3d 1324, 1328 (Fed. Cir. 2004); *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1549 (Fed. Cir. 1994). Thus, if the comparison reveals that plaintiff is simultaneously prosecuting the same claim against the United States in another court, § 1500 divests this court of jurisdiction. *Holloway v. United States*, 60 Fed. Cl. 254, 256 (2004).

Section 1500's purpose is illuminated by its legislative history, which was thoroughly discussed in *UNR Indus., Inc. v. United States*, 962 F.2d 1013, 1017–19 (Fed. Cir. 1992) and then summarized in *Keene*, 508 U.S. at 206–07. The statute's roots trace back to the Civil War's aftermath when ex-Confederate soldiers or supporters brought claims against the government for the cotton it seized during the war. *Id*. at 206. The Abandoned Property Collection Act, ch. 120, 12 Stat. 820, allowed these claimants to pursue their suits in our predecessor court, the Court of Claims, under the condition that the claimants prove that they had not aided the Confederacy—a hurdle that proved difficult to overcome. *Keene*, 508 U.S. at 206. In order to improve their chances of recovery, these claimants filed suits against federal officials in other courts, not under the aforementioned statutory cause of action, but instead under tort theories such as conversion. *Id.* (citing David Schwartz, *Section 1500 of the Judicial Code and Duplicate Suits Against the Government and its Agents*, 55 GEO. L.J. 573, 574–80 (1967)). This duplication of suits prompted Congress to prohibit anyone from filing in the Court of Claims "any claim . . . for or in respect to which he . . . shall have commenced and has pending" an action in any other court against an officer or agent of the United States. *Id.* (citing Act of June 25, 1868, ch. 71, § 8, 15 Stat. 77). The statute lives on today with only minor, non-substantive changes in its text.[4]

In light of the statute's history and text, courts have concluded that § 1500's purpose is two-fold: first, "to protect the United States from having to defend two lawsuits over the same matter simultaneously;" and second, "to force plaintiffs to choose between pursuing their claims in [this court] or in another court." *United States v. County of Cook*, 170 F.3d 1084, 1090–91 (Fed. Cir. 1999) (citing *UNR*, 962 F.2d at 1019). Courts have consistently interpreted § 1500 in a manner that effectuates this dual purpose.

---

[4] The only legislative comment or note accompanying § 1500 when it was adopted in 1948 was that the text's changes were "in phraseology" only. *UNR*, 962 F.2d at 1019 (citing Reviser's Notes, 28 U.S.C. § 1500, p. 1862). Since then, the only changes to the statute's text were those made to reflect the history of this court; *i.e.*, the transition from the Court of Claims to the Claims Court and then from the Claims Court to the current Court of Federal Claims. Pub. L. No. 102-572, § 902(a)(1) (1992); Pub. L. No. 97-162 (1982).

For example, the Supreme Court in *Keene*[5] announced that "the comparison of the two cases for purposes of possible dismissal would turn on whether the plaintiff's other suit was based on substantially the same operative facts as the Court of Claims action, at least if there was some overlap in the relief requested." 508 U.S. at 212. Regarding how much similarity or "overlap" between the operative facts can be tolerated, the Court in *Keene* pointed to the "in respect to which" language in § 1500 as an indication that "Congress did not intend the statute to be rendered useless by a narrow concept of identity providing a correspondingly liberal opportunity to maintain two suits arising from the same factual foundation." *Id.* at 213. While this statement in the Court's opinion appears to give § 1500 a broad preclusive effect, *Keene* expressly left open the issue of whether claims based on the same operative facts, but seeking *completely* different relief would implicate § 1500—an issue the Court of Claims decided in 1956, in *Casman v. United States*.[6]  *See id.* at n.6 (emphasis added).

When the Federal Circuit again took up the *Casman* situation referenced in *Keene*, it held that "for the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from *the same operative facts*, and must seek *the same relief*."

---

[5] Keene was a company that manufactured and sold thermal insulation and acoustical products containing asbestos. *Keene*, 508 U.S. at 202. After multiple parties sued Keene in tort for allegedly exposing them to asbestos fibers, Keene filed a third-party complaint against the United States in the District Court for the Western District of Pennsylvania, seeking indemnification or contribution. *Id.* Keene's third-party complaint proceeded on the theory that the products the asbestos claimants had been exposed to, had in fact, been supplied to the government pursuant to government contracts and in accordance with specifications laid out by the government in those contracts. *Id.* at 203. While Keene's claim was pending in district court, Keene filed suit in the Court of Federal Claims on a breach of implied warranty theory, seeking amounts "which may be recovered from Keene by the claimants, by settlement or judgment." *Id.* Keene filed yet another suit against the United States, this time in the District Court for the Southern District of New York, on various tort theories, plus an additional Fifth Amendment takings theory. *Id.* at 204. This third suit also sought damages for the amounts paid by Keene to asbestos claimants. *Id.* Keene's final move was to file a fourth suit back in the Court of Federal Claims, this time advancing the same takings theory as in district court and seeking amounts that the United States recouped from the asbestos claimants whom Keene already paid. *Id.* at 204–05. The Court of Federal Claims dismissed the two suits before it, citing 28 U.S.C. § 1500. *Id.* at 205. The dismissal was ultimately upheld by the Federal Circuit sitting *en banc*. *Id.*; *UNR*, 962 F.2d at 1025. On a grant of certiorari, the Supreme Court affirmed, holding that when applying § 1500 "dismissal . . . turn[s] on whether the plaintiff's other suit was based on substantially the same operative facts as the [Court of Federal Claims] action, at least if there [is] some overlap in the relief requested. That the two actions [are] based on different legal theories [does] not matter." *Id.* at 212 (internal citations omitted).

[6] In *Casman*, plaintiff alleged he was illegally dismissed from his government position. 135 Ct. Cl. 647, 647 (1956). He brought suit in the Court of Claims for back pay, while he had pending a suit seeking reinstatement in district court. *Id.* The court stated that the relief he sought was "entirely different" because neither court had the power to grant the relief requested in the other; *i.e.*, the Court of Claims could not reinstate plaintiff and the district court could not award monetary damages. *Id.* at 650. Accordingly, the court held that § 1500 did not apply. *Id.*

*Loveladies Harbor, Inc.*,[7] 27 F.3d at 1551 (emphasis in original).  However, in an earlier portion of the opinion, the court framed the rule differently, stating, "[t]he issue . . . is whether § 1500 denies jurisdiction to the Court of Federal Claims if, at the time a complaint for money damages is filed, there is a pending action in another court that seeks *distinctly different relief*." *Id.* at 1549 (emphasis added).  Later, the court returned to the "distinctly different" formulation when it stated, "[if] the claims are distinctly different, [plaintiffs] are excused from the jurisdictional dance required by § 1500." *Id*.  Read in its entirely, the rule of *Loveladies* is this: if the operative facts are the same, but the relief requested is "distinctly different," then § 1500 does not apply.  *See id.* at 1549–51.

Setting the *Keene* and *Loveladies* formulations of § 1500 side-by-side, it becomes clear that they are two sides of the same coin:

> (a) If the operative facts are substantially the same and there is some overlap in the relief requested, then § 1500 applies.  *Keene*, 508 U.S. at 212.

> (b) If the operative facts are the same, but the relief requested is distinctly different, then § 1500 does not apply.  *See Loveladies*, 27 F.3d at 1549–51.

Thus, *Keene* frames the rule in the positive; *Loveladies* frames the rule in the negative.  *See Tohono O'Odham Nation*, 79 Fed. Cl. at 656 ("[T]he inquiry is whether there is meaningful overlap both in the underlying facts and in the relief sought in the two actions.  A perfect symmetry of relief is not necessary"); *Ak-Chin Indian Cmty. v. United States*, 80 Fed. Cl. 305, 316 (2008) ("[T]he difference between the analyses in *Keene* [] and *Loveladies* . . . center[s] on . . . whether the relief sought in both courts is 'distinctly different' or if there is 'some overlap' . . . .  [The issue] is whether plaintiff's claims are based on the same operative facts and whether the relief plaintiff seeks in both courts contains 'some overlap' or is 'distinctly different.'") (internal citations omitted).

Assuming that the § 1500 comparison reveals that plaintiff's claims present substantially the same operative facts, § 1500 will divest this court of jurisdiction unless the relief sought is "distinctly different."  *See Loveladies*, 27 F.3d at 1549.  The fact that the first complaint seeks additional relief beyond what is sought in the second complaint, however, does not preclude § 1500 from applying.  *See Harbuck*, 378 F.3d at 1329 ("The inclusion of other and different requested relief in the two

---

[7] In *Loveladies*, plaintiff owned a tract of wetlands.  *Id*. at 1547.  When plaintiff sought a fill permit from the Army Corps of Engineers, the permit was denied.  *Id*.  Plaintiff challenged the permit denial in federal district court.  *Id*.  While plaintiff's claim was pending in district court, plaintiff filed suit in the Court of Federal Claims, maintaining that the permit denial was a taking of private property and seeking monetary damages.  *Id*.  The Court of Federal Claims awarded plaintiff damages and the government appealed on the grounds that § 1500 deprived the Court of Federal Claims of subject matter jurisdiction.  *Id*. at 1547–48.  The Federal Circuit proceeded on the assumption that the operative facts were the same between the two claims, but concluded that the relief sought was "distinctly different."  *Id*. at 1552, 1554.  Thus, the Federal Circuit held that the Court of Federal Claims had jurisdiction to hear plaintiff's claim.  *Id*. at 1556.

complaints does not avoid the application of [§ 1500]"). In other words, § 1500 may apply even if there is only "some overlap" in the relief requested. *Keene*, 508 U.S. at 212.

Furthermore, when comparing the claims as § 1500 requires, it is the similarity of the operative facts and the relief sought that controls, rather than the underlying legal theories. *See Keene*, 508 U.S. at 212 ("That . . . two actions [are] based on different legal theories [does] not matter.") *Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1563 (Fed. Cir. 1988) ("[W]e construe the term 'claim' in 28 U.S.C. § 1500 to be defined by the operative facts alleged, not the legal theories raised."). Conversely, if the claims present distinctly different operative facts, § 1500 does not apply. *See d'Abrera v. United States*, 78 Fed. Cl. 51, 58 (2007) ("[I]f a material factual difference exists between two claims, they are not the same for the purposes of Section 1500"); *Heritage Minerals, Inc. v. United States*, 71 Fed. Cl. 710, 716 (2006) ("while claims may be supported by some common operative facts, [s]ection 1500 is not implicated where the material facts supporting each claim are characterized as largely dissimilar") (internal quotations omitted). With the above framework for a § 1500 analysis firmly established, a comparison of plaintiff's claims, both in their operative facts and in the relief they request, is in order.

**A. Comparison of Operative Facts**

To aid in the comparison of operative facts, two appendices to this opinion have been created. Appendix A of this opinion is a side-by-side comparison of the enumerated averred facts in both the district court complaint and the complaint in this court. Appendix B constitutes a side-by-side comparison of the stated claims for relief in each complaint.[8] Even a cursory glance at these appendices reveals that plaintiff's claims are very similar.

Of the 14 paragraphs of alleged facts in plaintiff's complaint in this court, 10 are either identical or nearly identical to those found in plaintiff's district court complaint. Turning to the differences, the additional text in paragraph 10 of the complaint in this court includes statements of law—namely additional fiduciary duties arising out of the same trust relationship alleged in the district court complaint. Paragraph 15 of the Court of Federal Claims complaint contains plaintiff's conclusions that defendant breached its fiduciary and statutory duties owed to plaintiff. Consequently, neither paragraph 10, nor paragraph 15 alleges an operative fact.

Paragraph 16 of the complaint in this court *does* contain an allegation of operative fact not word-for-word contained in the district court complaint. In the Court of Federal Claims complaint, plaintiff alleges that "as a result of Defendant's mismanagement, the Tribe has lost royalties, interest, income, profits and proceeds . . . ." (Compl. ¶ 16.) But, while not word-for-word the same, paragraph 17 of the district court complaint contains essentially the same allegation, to wit: "Defendant's mismanagement of trust funds has resulted in losses to the Tribe, a trust beneficiary." (D.D.C. Compl. ¶ 17.)

---

[8] The only material omitted from these appendices are: (1) the identification of the parties concerned; (2) the statements of jurisdiction; (3) plaintiff's legal citations; (4) a large block quote from a Congressional report in paragraph 16 of the district court complaint; and (5) plaintiff's prayers for relief which are reproduced within this opinion.

Significantly, paragraph 17 of the Court of Federal Claims complaint contains the allegation that plaintiff has a claim pending in district court seeking an accounting and "[t]o the extent that such an accounting . . . determines that the tribe has a monetary claim against the [d]efendant, the tribe seeks damages on that claim . . . ." Paragraph 17 is notable in two respects. First, plaintiff concedes therein that it has a related claim pending against defendant in district court. Second, and more importantly, plaintiff acknowledges that an accounting is necessary for the Court of Federal Claims to award monetary damages to plaintiff. As will be more fully explained below, this is significant because if an award of monetary damages necessitates an accounting, then there is potential overlap in the relief requested in both courts. (D.D.C. Compl. at 10.)

The remainder of plaintiff's stated claims, as reproduced in Appendix B, allege breaches of duty arising from the same trust relationship and involving the same trust property. Indeed, both complaints begin by setting out plaintiff's claims in an almost identical manner. (*Compare* D.D.C. Compl. ¶ 24 ("Defendants owe the Tribe a fiduciary duty and obligations of the highest responsibility and trust to administer the Tribe's trust proper and trust funds with the greatest skill and care possessed by the trustee"); *with* Compl. ¶ 19 ("Defendant owes the Tribe a fiduciary duty and obligations of the highest responsibility and trust to administer the Tribe's trust lands and funds properly with the greatest skill and care possessed by the trustee")).

Despite the apparent similarities between the factual allegations of the two complaints, plaintiff argues that there are distinctions to be drawn in both sets of operative facts. (Pl.'s Opp'n to Mot. to Dismiss at 11–12.) Plaintiff identifies paragraphs 15, 16, 20–22, and 27 of its Court of Federal Claims complaint and contends that these "material allegations . . . are not to be found in [the] District Court Complaint; nor are these allegations otherwise comparable or similar to [the] allegations contained in the District Court Complaint." (Pl.'s Opp'n to Mot. to Dismiss at 11–12.) But these contentions are clearly erroneous. To be sure, as discussed above, paragraph 15 merely states a legal conclusion, and paragraph 16 contains the same factual allegations as paragraph 17 of the district court complaint. Moreover, the remainder of the complaints simply focus on differing aspects of the same trust relationship. Thus, paragraphs 20–22 and 27 of the complaint in this court focus on defendant's management of the trust property, while paragraphs 25–27 and 29–30 of the complaint in district court focus on defendant's alleged failure to account for trust property and funds. This difference in focus simply does not give rise to a substantial or material difference in the alleged operative facts. Indeed, in a case factually similar to the one at bar, this court in *E. Shawnee Tribe of Okla. v. United States*, 82 Fed. Cl. 322, 326–27 (2008), concluded:

> [T]he claims in the case in the district court and in the instant action are basically different manifestations of the same underlying claim that the government failed properly to administer and manage Eastern Shawnee's trust land and assets. The two claims involve the same parties, the same trust corpus, and the same breach of the same trust duties over the same time period. The only apparent factual difference is a narrower focus on the accounting aspects of the alleged breaches of trust duties in the district court complaint.

The court in *Ak-Chin* reached the same result:

> The nature of Indian trust cases and the government's trust responsibility owed to Indian tribes does not lend itself to a simple delineation or separation of operative facts as they pertain to the government's various duties owed to Indian tribes. It is not apparent to the court how it could address facts related to the government's duty to invest and deposit plaintiff's trust funds without considering the facts related to the government's overall trust obligations owed to plaintiff, including its duty to account.

80 Fed. Cl. at 319.

In sum, while there is a slight difference in focus between plaintiff's claims, this difference does not implicate enough additional operative facts to avoid the application of § 1500. *See also Passamaquoddy Tribe v. United States*, 82 Fed. Cl. 256, 285 (2008) ("[I]t is of no consequence that plaintiff styles its suits to focus on different trust duties, when the proof of breach of each of those purportedly distinct duties will necessarily require review of the same facts."). To conclude otherwise would allow "the statute to be rendered useless by a narrow concept of identity providing a correspondingly liberal opportunity to maintain two suits arising from the same factual foundation"—a result that Congress did not intend. *Keene*, 508 U.S. at 213. After comparing the claims presented here and in district court, this court concludes that these claims present substantially the same operative facts. However, such a conclusion, standing alone, is insufficient to preclude this court from hearing plaintiff's case. *Lovelades*, 27 F.3d at 1551. Accordingly, this court now turns to the second prong of the § 1500 analysis—a comparison of the relief requested.

**B. Comparison of the Relief Requested**

In its district court complaint, plaintiff's prayer for relief seeks:

> (1) . . . a declaration that the [d]efendants have not provided the tribe with a full and complete accounting of the Tribe's trust funds as required by law; (2) . . . an injunction requiring the [d]efendants to provide a full and complete accounting of the tribe's funds; (3) . . . attorney's fees and costs as provided by law; and (4) . . . other relief as may be just and equitable.

(D.D.C. Compl. at 10.) By comparison, plaintiff's prayer for relief in the Court of Federal Claims asks for "compensatory damages against [d]efendant, interest, costs, attorney's fees, and all other and further relief as this Court deems just and proper." (Compl. at 6.)

In opposition to defendant's motion to dismiss, plaintiff argues that the two claims "seek entirely different relief," because the complaint in this court "seeks only monetary damages," while the complaint in district court "seeks only equitable, non-monetary relief." (Pl.'s Opp'n to Mot. to Dismiss at 1.) By "equitable, non-monetary relief," plaintiff refers to its request in district court for a declaratory judgment and an injunction requiring an accounting. (*See* D.D.C. Compl. at 10.) Admittedly, if this court were to limit its analysis solely to the phrasing of plaintiff's prayers for

- 10 -

relief—a request for a declaratory judgment and an accounting in district court, and monetary damages in the Court of Federal Claims—plaintiff's argument might carry the day. However, this court must also read these complaints "in light of the legal and factual circumstances [upon] which they were drawn." *Loveladies*, 27 F.3d at 1554.

Upon review of the attending legal circumstances in this case, two dispositive legal certainties stand out. First, in breach of trust cases, an accounting is required before a court may award monetary damages.[9]  *E. Shawnee*, 82 Fed. Cl. at 328. Second, this court has the power to render an accounting in support of a monetary award. *Klamath & Modoc Tribes v. United States*, 174 Ct. Cl. 483, 490 (1966). Thus, when plaintiff requests monetary damages for breach of trust, plaintiff is, in substance, also asking for an accounting in support of that award. *See Tohono O'Odham*, 79 Fed. Cl. at 653 ("assuming this action were to proceed in [the Court of Federal Claims], and plaintiff satisfied its burden of proof, what would ensue would amount to an accounting, albeit in aid of judgment"). Thus, this court recognizes that plaintiff's prayers for relief, in essence, seek a declaratory judgment and an accounting in district court, and an accounting and monetary damages in the Court of Federal Claims. Viewed in this light, the overlapping requests for an accounting become obvious. The court in *Tohono O'Odham*, best summarized these legal circumstances and reached the same conclusion:

> Unlike regulatory disputes, suits brought by Indian tribes, claiming a breach of trust, do not neatly separate between the exclusively injunctive relief typical in a district court APA review of agency action on the one hand, and, on the other hand, a suit here for money damages flowing from the consequences of that agency action. In substance, the action for breach of trust in this court is an equitable proceeding that produces a monetary remedy. Thus while the court has jurisdiction because of the demand for money, the process for getting to that relief is fundamentally equitable, meaning that there is potential overlap of both the accounting and money aspects of the two complaints.
>
> * * *
>
> [A]lthough a pre-liability, stand-alone general accounting is unavailable in this court, after a presentation of sufficient evidence, an accounting is unavoidable here and will be co-extensive with all the plaintiff's claims of breach. The accounting is necessary to establish the quantum of damages. Independent, therefore, of the monetary relief aspects of the two complaints, there is overlap in the request for an accounting.

---

[9] As noted above, plaintiff appears to recognize this proposition in its complaint in this court. (*See* Compl. ¶ 17) ("The Tribe has commenced an action against the Government for an accounting in U.S. District Court . . . . To the extent that such an accounting . . . determines that the Tribe has a monetary claim against the [d]efendant, the Tribe seeks damages on that claim in this action.").

- 11 -

79 Fed. Cl. at 657, 659. In *E. Shawnee*, on nearly identical facts, the court confronted and dispensed with the same argument that plaintiff presents here:

> Eastern Shawnee contends that it does not seek the same relief in the actions because the relief sought in district court is solely equitable and the relief sought here is solely monetary. However, in substance the relief sought in the two complaints, an accounting and reimbursement for losses resulting from mismanagement, is overlapping. [I]f Eastern Shawnee were to establish liability for breaches of trust in this proceeding, an accounting would be required, and that accounting would overlap with the accounting available in equitable proceedings such as the case brought in district court.

82 Fed. Cl. at 328 (internal citations omitted).

Plaintiff "respectfully submit[s] that *Tohono O'Odham* was wrongfully decided . . . ."[10] (Pl.'s Opp'n to Mot. to Dismiss at 9.) In support of this conclusion, plaintiff argues that "the relationship between the 'accounting and monetary aspects' in these [Indian] trust cases is indistinguishable from the back pay and reinstatement aspects in *Casman*, established as valid law in *Loveladies*." (Pl.'s Opp'n to Mot. to Dismiss at 9.) Plaintiff's analogy to *Casman* falls short of the mark.

*Casman* was briefly summarized earlier at footnote 6 in this opinion. To review, the plaintiff in *Casman* alleged that he was illegally dismissed from his government position. 135 Ct. Cl. at 647. He first brought a suit for reinstatement in district court and then, while that suit was still pending, brought a second suit in the Court of Claims for back pay. *Id.* In its opinion, the *Casman* court observed that one of the purposes underlying § 1500 was to "require an election between a suit in the Court of Claims and one brought in another court." *Id.* at 649. The court went on to conclude:

> Here the plaintiff obviously had no right to elect between courts. The claim in this case and the relief sought in the district court are entirely different. The claim of plaintiff for back pay is one that falls exclusively within the jurisdiction of this court, and there is no other court which plaintiff might elect. On the other hand, the Court of Claims is without jurisdiction to restore plaintiff to his position.

*Id.* at 649–50. Plaintiff asserts, "As in *Casman*, there is no election available to [p]laintiff in seeking relief in the form of money damages. Conversely, the jurisdiction of this [c]ourt does not include actions in equity." (Pl.'s Opp'n to Mot. to Dismiss at 7) (internal citations and quotations omitted).

However, plaintiff's attempt to analogize its case to *Casman* is fatally undercut by the law noted above—this court can render the accounting plaintiff seeks in district court when considering

---

[10] Presumably, plaintiff would also take exception to the court's opinion in *E. Shawnee*, which was delivered the same day plaintiff filed its memorandum in opposition to the instant motion to dismiss.

- 12 -

plaintiff's request for monetary damages. *Klamath & Modoc Tribes*, 174 Ct. Cl. at 490. In *Casman*, neither court had the power to grant the relief requested in the other; *i.e.*, the Court of Claims could not reinstate the plaintiff to his original position and the district court could not award monetary damages for back pay. In the case at bar, the district court still cannot award monetary damages, but the Court of Federal Claims *can* perform an accounting when considering plaintiff's request for monetary damages. Thus, an election was available to plaintiff, and an easy one at that—file suit in district court and, provided plaintiff proved its case, receive an accounting, or file suit in this court and receive the same accounting, plus the monetary damages that such an accounting would reveal.

Because an accounting is a necessary precursor to an award of monetary damages in the Court of Federal Claims, this court concludes that there is, at least, some overlap in the relief requested. The fact that plaintiff also seeks additional relief in the form of a declaratory judgment in district court is ultimately irrelevant. *See Harbuck*, 378 F.3d at 1329 ("The inclusion of other and different requested relief in the two complaints does not avoid the application of [§ 1500]"). Moreover, plaintiff's request for such a declaration only serves plaintiff's goals of obtaining an accounting. To be sure, as discussed above, such an accounting is necessary to support an award of monetary damages. In other words, the relief that plaintiff seeks in district court—a declaratory judgment and an accounting—is not "distinctly different" from the request for monetary damages in this court. Accordingly, the second prong of the § 1500 analysis is satisfied.

Plaintiff contends that by bringing its motion to dismiss, defendant is trying to "whipsaw [p]lainitff into a jurisdictional no-man's land where it is left without a remedy." (Pl.'s Opp'n to Mot. to Dismiss at 2.) The court can only respond that plaintiff elected to enter this jurisdictional no-man's land when it sought duplicate relief on the same facts in two different courts at the same time. Allowing plaintiff's case to move forward would undermine both of the identified purposes underlying § 1500. Not only would it force the United States to simultaneously defend itself from the same claim in two separate forums, but plaintiff would also have skirted its duty to elect one forum before prosecuting its claim. This should not have been a difficult choice for plaintiff to make. Provided plaintiff proved its case, this court could have provided the relief that plaintiff sought—both an accounting and subsequent monetary damages. Instead, pursuant to the mandate of 28 U.S.C. § 1500, this court now lacks jurisdiction over the matter.

### IV. CONCLUSION

Accordingly, defendant's motion to dismiss is **GRANTED**. The clerk is directed to dismiss the complaint without prejudice. Each side shall bear its own costs. **IT IS SO ORDERED.**

**s/** *Lawrence J. Block*

**Lawrence J. Block**
**Judge**